Good morning. May it please the court. My name is Dwayne Reno. I'm here on behalf of the appellants. Your Honor, I would begin by addressing the liberty interest claim, specifically the question of was the removal of Appellant Rodriguez from his position as Muni's General Superintendent of Rail Operations an action that meets the Sigma Plus test for a liberty interest infringement. Under this test, there has to be something more than a false standard of statement. There has to be what this Court has described as the alteration of a right or status recognized by State law. Was he removed or transferred? Well, he was removed, Your Honor, because this was a position for which he had applied and gone through a competitive examination. The position that he was placed in after he was removed from that position was a staff position for which there was no competitive examination. There was not even, in fact, a job description. Was his salary reduced? Ultimately, it was, because as he remained in the position of General Superintendent, he and all the other General Superintendents would have received a change of classification with a resulting for attendance. At the time that his job duties changed, was there a diminution in salary? No, not at that time. Or benefits? Not at that time, yeah. Is he still employed by Muni? Yes, he is, but he's not in the same classification any longer. He is now in a lower classification because he did not hold a civil service appointment. His appointment was what they call a provisional civil service appointment, which has a limited term. As he remains as a General Superintendent, he would have, as I said before, been in a different class where he would not have been a provisional appointment. He would have had a regular appointment. Was it protected by civil service or was it unprotected? No. It was not either? No, these are management positions, and that's why we're bringing a liberty interest claim as opposed to a property interest claim. So the point about his change of status is obviously the question that I want to address because that is the question that would be determinative here. As I said before, this was an appointment that he achieved by going through a competitive examination process. This was an executive management position at the highest level of management. He had some 1,000 employees that he was the manager for. The job had more prestige than the one he was moved to. Much more prestige. Is that a cognizable claim standing alone? It is, Your Honor, in light of the impact that removal of that position would have on his ability to obtain other employment as an executive management employee. The issue is not what he lost in the way of money. The issue is what he lost in the way of the ability to obtain employment of the same nature. That is his liberty interest. This is not a property interest claim. Being removed from a position as an executive management employee under a cloud of allegations of time-trial fraud and sexual misconduct and placed, taken from that position, placed in a position where he has no one under him, he has no defined duties, basically being put in a closet somewhere. Well, let's look at it from the practical standpoint of managing this system. Are you suggesting that the manager of the overall transportation system has no right to manage or to change policy or to use the appointment authority to develop policy along the lines that the overall manager wants to pursue? Absolutely not. What I'm saying is that they should have removed him from his position for some of the reasons that they allege, because although his immediate supervisor said during deposition testimony that he was an outstanding employee, the person in charge of the railway said she felt uncomfortable with his management style. Isn't that within the discretion of the overall manager? Absolutely. If she had done that and not made it known at the same time that he was being accused of time-trial fraud and sexual misconduct, there would be no lawsuit. Because being removed from a position because your management style doesn't fit with what the employer's desire is does not involve what the constitutional parameters are for a liberty interest. What we're talking about is being removed on allegations of misconduct. Were there allegations or were these what we would simply call rumors? There were allegations. They were in the notice that he received. He was told that when he went and sat down with Ms. Mancini. She said, I had an investigation made, and on the basis of the investigation, I determined that you were condoning time-trial fraud. She said, also, I don't like the way you've handled this. I don't like the way you've done that. Three or four different other things. All those three or four different other things, I would agree, he had no right to a liberty interest hearing because they were not allegations that would impugn his moral character. But when she said that you have condoned time-trial fraud, and when she said to other people he was also having an affair with his secretary, and that's why he condoned time-trial fraud, then she crossed the line. And at that point, his reputation was virtually ruined within Muni and within the community, and he was not going to be hired in any further executive management positions. Was he indicted or criminally charged at all for this alleged time-trial fraud? Not punished at all. Well, wasn't there an investigation by the manager that indicated that he had approved pay for his secretary for three days that she was not at work? That's what he was told when he went and met with her. He had no advance notice that she was going to be accusing him of that. He went back later and met with his secretary and said, what is this? And she said, it's not true. She gave him the evidence to show it was not true, but by that time he had already been removed. And that gets to the point about what kind of a hearing he should have been given. The court has held that employees who are given a pre-termination ability to respond to these kinds of allegations have had the hearing that's appropriate. Didn't the voters of San Francisco approve a proposition before these events occurred that, among other things, made general superintendents to serve at the pleasure of the general manager? That's true, but we don't have an issue about property interests. What we're talking about is liberty interests. You're saying that he could have been fired for a number of reasons, but not for this. No, I'm saying he should have been fired for this, but he has a right to a hearing. Actually, I'm not even saying he has to be given a hearing beforehand, but if he had been given a hearing beforehand, it should have been a different kind of hearing. And the liberty interest is? His ability to obtain other executive management positions in the mass transportation industry. Not just Mooney, but in other similar organizations in other states maybe? We submitted evidence that he was essentially lined up for a position after retirement, going back to the Philippines to be a general manager of a municipal railway system in the Philippines. But after all of this, after all these allegations came out, that he was no longer being considered for that kind of a job. Any decisions, case law decisions, support this notion of a liberty interest? Or would we be creating new law to recognize? No, Your Honor. The other. Well, this is this. This first decision in Finkelstein versus Bergen. Nine twenty four. Second, fourteen, forty nine. And I miscited that. My brief, Your Honor. I cited the earlier decision in Finkelstein. But it's a nine twenty four. Second, fourteen, forty nine. Said that an employee's liberty interest can be infringed by a 10 day suspension. Now, did you say repeat the name of the case? You can think Finkelstein. Finkelstein. I find it cited in your brief. Yes. My brief is the blue brief. I'm sorry. My brief is the blue brief. Yeah. The blue brief. And I you say it's miscited, but I don't see the name. Is it on page three? I'm sorry. Oh, it's in the reply brief. All right. Is that your strongest case? The Finkelstein case? No. The subsequent decision in Ulrich probably is even stronger. Ulrich. Uh huh. That's Ulrich versus City and County of San Francisco. It's really fed her nine sixty eight. Two thousand and two states in that case. The plaintiff, a doctor who worked for the city and county of San Francisco, resigned from his employment. And then upon finding out that he was being accused of misconduct, decided he wanted to rescind his resignation. This court said that when he was not allowed to rescind his resignation, his liberty interest was infringed because the reason being given was that he had committed misconduct. Did this information go into his personnel file? I have no idea, Your Honor. I believe it did. It went into a state file that should be seen by other people with whom he would be applying for employment, and therefore would affect his employment. I'm not sure it went into his personnel file. But the point is that what we're looking at is if the state takes some kind of employment action that has the impact of rendering an employee basically unable to continue in their career that the employee was involved in, there's an infringement of the liberty interest. The principle is not was the employee deprived of some kind of property because that would then be a property interest claim. The principle is what impact did it have on the employee's ability to earn a living? And what happens here was there's a very large impact because of the change in the employee's status. There are cases from other circuits, wrongly decided, I believe, that say there has to be termination of employment. In this circuit, the Finkelstein decision said, no, that's not necessary. The Eldridge decision says, you know, you have to be an employee at the time. What's important is that the employer took some employment action other than merely accusing the employee of wrongdoing that has injured the employee. What type of hearing is he entitled to based on your statement here? Well, as the court has said, it varies depending on the circumstances. If he had been told ahead of time, we think you've been condoning time for a fraud and you've been having an affair with your secretary and he had been allowed to come in before he was removed and present the evidence that those were untrue, that would have been a sufficient hearing under the precedent of the courts. When he was called into the office. With no advance notice. I understand. Not done with my question. He was called into the office. He was told about the time card problem. Correct? Yes. The overtime problem. Yes. Was any mention made of an affair? Was any mention made of an affair? No. No, that he was not accused of at that meeting. That came out in the rumors afterwards that were spread by management officials. So what I'm saying. What was the extent of, at least from your point of view, of Muni's publication of any adverse information? That's part of the showing that needs to be made. Yes. What is it that Muni did that put itself in the position of spreading bad information about this individual? Well, they have declarations from, I believe, four different witnesses, that four different management officials were telling their subordinates of the allegations that had been the basis for his removal from his position. He received phone calls the next morning from people within Muni who were not even in the same division since what was happening was the rumors was once released within his division. You're referring to the rumors? Pardon? You're referring to the rumors. Well, they were statements that were made by the management officials as supposedly true statements. And then they became rumors. You know, they have lived in a life of their own. Kelsey, you're down to about three minutes. You may wish to reserve or you also may use them if you'd like. All right. Well, I want to get back to the nature of the hearing. If the cat is out of the bag, if the employee has already been accused publicly of committing immoral or criminal acts, obviously, at that point, a hearing where the employee goes in and talks about it. When was he accused of immoral or criminal acts? Well, he was accused of criminal acts by his direct – when he was removed. He was accused of condoning time fraud at that time. Was he told these are criminal violations? They are criminal violations. Was he told that? No, but they are. Did he ask for time to rebut that when he was removed? He didn't ask for time. He was too shocked to realize that that's what he should do. And he wasn't given any time. He was told they were being removed as of now. When's the first time he asked for a hearing after that? When he came to see me about a week and a half later. How long? A week and a half later. I told him, you have a right to a hearing. I thought he did under the circumstances. But anyway, the time of the hearing, once the hat is out of the bag and the publicity has gotten out there, then at that point a simple meeting with your superiors to rebut the allegations won't do the job. To restore your reputation, you have to have some kind of a public hearing, like a civil service commission hearing. And that's what we were contending he should be entitled to. Thank you, counsel. You have some reserved time. Mr. Rolnick. May it please the Court. My name is Jonathan Rolnick. I'm a deputy city attorney, and I represent the appellees in this matter. This case raises the question of whether a public employee who claims that he has been the subject of stigmatizing charges, but who continues to hold employment at the same rate of pay, benefits, civil service classification, who fails to offer evidence that the employer publicized the allegedly stigmatizing charges outside of the employer, and who is offered but rejects an opportunity to clear his name, is nonetheless entitled to a jury trial on his claim. I've got two concerns. First, the same rate of pay. Now, he was at a higher level, but he was reduced back to sort of a base level. Is that correct? He was, yes, after the Court granted summary judgment. There's no evidence in the record that Mr. Rodriguez was reduced to a lower rate of pay. After the Court granted summary judgment in January 2003, more than two years after these events took place, sometime between then and I don't know the exact date, there were layoffs at Muni related to the budget crisis. Mr. Rodriguez held a provisional appointment. He had no permanent civil service rights. And Mr. Rodriguez, along with many other Muni employees, those provisional appointments were eliminated, and he was returned to his last and highest level in which he held a permanent civil service classification. That is not part of the record. That's correct. Up until the date of the summary judgment motion, which was, again, two years after these events took place. So when you say he was at the same rate of pay, in other words, after these events, he had the promotion and then or he had the transfer, at least in terms of the relevant time here, there was no diminution in pay. That's your point. That is correct. Did he miss a chance to get a promotion? There was some sort of or some kind of a bonus or something that his counsel said that had he stayed in the old job, he would have had a chance for some sort of a raise or something. No. He held, again, a provisional appointment. Muni was in the process of creating a new class that Mr. Rodriguez was a candidate for, but for which Mr. Rodriguez was never selected for that new class. And despite what Mr. Reno stated, the position that Mr. Rodriguez held at the time that these events took place was a provisional appointment. It was not a permanent appointment. It was not one that he secured through any competitive civil service merit-based competition. The provisional appointment under the San Francisco Charter is temporary in nature and it does not carry with it any of the other indicia of a property interest that a permanent civil service classification would hold. And you said he was given an opportunity to clear his name? Yes, he was. What was that opportunity? The opportunity arose in January in response to Mr. Reno's letter. Ms. Mancini, who was the supervisor who took the actions in this case, listed out again the performance issues that she had discussed with Mr. Rodriguez in late November and said, I don't believe that you're entitled to a due process hearing with respect to these issues, but nonetheless we will offer you one. She offered the name and the phone number of another deputy general manager at MUNI and informed Mr. Reno that if Mr. Rodriguez wanted to proceed with contesting the charges that he was contesting, that he should contact that individual. Thereafter, there was some communication between the city and Mr. Rodriguez, because Mr. Rodriguez was not satisfied with that particular individual. We offered him other people who he might have an opportunity to discuss the claims against him, and ultimately another person was selected. A date for a hearing came and passed without Mr. Rodriguez appearing. Ms. Mancini also offered him in that January letter an opportunity to respond to these charges in writing, which he failed to do as well. How long was that after he was transferred? That was in mid-January, and the transfer or the transfer from one function to another occurred, I believe, the meeting was November 28th of the previous year. This is a post-termination, but you're saying you're going to do it? There was no termination. I mean the post-transfer, okay. Correct. And so you're saying that even if he was entitled to something, you gave him the chance and he didn't take it? Correct. And as to the initial removal of the functions, he had no due process pre-implementation rights with respect to that. Again, he held a provisional appointment. There was no removal from that appointment he was holding. There was simply a change in his job duties, and under the circumstances, there was no obligation to give him a due process. Moreover, with respect to the liberty interest, the communication, the publication was only between Ms. Mancini and Mr. Rodriguez. That does not satisfy the publication requirement that might have entitled him to either a pre-implementation or a post-implementation due process hearing with respect to the liberty interest. The publication needs to be certainly to somebody other than just the plaintiff, the employee in the case. He mentions that there were a lot of rumors around the place, and people were calling him up. Do those have to be attributed to Ms. Mancini? Is it sufficient that they're just rumors? I believe they need to be attributed to somebody with responsibility for the decision here. The record, I believe, quite clearly indicates that Mr. Rodriguez conceded that he was not aware of Ms. Mancini ever saying either to him or anyone else that he had engaged in time card fraud or that he had had some inappropriate relationship with his secretary. It appears that there were rumors, but there is no link of those rumors and what Ms. Mancini did or did not say. In fact, shortly after her November meeting with Mr. Rodriguez, she met with the other managers in the light rail division at Muni. And during that meeting, she advised the managers there that Mr. Rodriguez was going to be removed as the general superintendent and given other duties. When the employees asked why, and the record is absolutely clear on this, the declaration from numerous managers who were there is all that Ms. Mancini said was that they did not see eye to eye in the operation of the light rail system, and that worst case scenario, there were, quote, improprieties, unquote, with respect to his job performance. Again, there was no mention of time card fraud or some inappropriate sexual relation. But more importantly, I think the case law makes clear that the publication has to be publication to the outside world, not simply publication within the employer's workplace. Otherwise, it would be unworkable, because obviously when you would transfer someone of Mr. Rodriguez's standing within Muni, people are going to hear about that, people are going to have questions, and an employer has to have an ability to address those questions in the workplace. The issue for publication for liberty interests is that the publication needs to go to the outside world. And there's no evidence here that any of the individuals who are appellees in this case, Ms. Mancini or any of the other managers published these statements, whatever the statements may have been, to anybody other than other Muni employees in the light rail group. Counsel, would you speak to the liberty interests per se issue, which Mr. Reno argues based on Ulrich and the Finkelstein cases? What's your analysis of those two cases? Certainly. I think in both those cases, unlike in this case, there is the loss of a status or right protected under State law. In Finkelstein, there was ---- In other words, proprietary? Correct. Now, he concedes this is not a proprietary case. This is purely a liberty case. That's true. But I believe in order to show the plus of the stigma, there has to be some loss of a tangible right or entitlement that's recognized by State law. In Finkelstein, I believe the Court actually did not address the issue of a suspension being sufficient for a liberty interest in the context of discussing the underlying merits of a liberty interest claim. I believe they discussed it in the context of analyzing whether or not individual managers were entitled to qualified immunity with respect to such conduct and a liberty interest. But the distinction of Finkelstein is the gentleman was suspended for ten days. He lost ten days of pay and benefits. There is no loss here in this case. In Ulrich, the employee of the city and county lost their job. They were denied rehire. And in conjunction with that denial of rehire, in other words, the loss of the job and the right to return to that job, there was also a what they the term was an adverse action report. He was a doctor. And that adverse action report indicated that he had resigned under threat of an investigation for misconduct. And that adverse action report was then, I'm not sure if it was placed in his personnel file at the city, but that adverse action report was transmitted to both State and Federal authorities, I believe presumably licensing boards, that would have had a continuing long-term effect on his ability to find a job as a doctor, not only in the city but perhaps anywhere in the United States. And so in that basis, there are very different cases. There was an actual loss of a status or right. Here there has been absolutely none. And there are no cases that I'm aware of in which an employee who retains the same classification, same pay, same benefits, but is given different job duties, has stated enough of the stigma plus test to show the denunciation or the loss of a status or right. In fact, he had no status or right with respect to any particular job duties. The executive director of MUNI had the discretion to assign him any job duties that the executive director felt were appropriate, given the classification he held. Is there no further questions? Thank you, counsel. Mr. Reno, you have some reserved time. Thank you, Your Honor. As I indicated in my reply brief, it may be that because of the fact that we're talking about facts being interpreted in different ways, that some of these issues are really observing trial issues, that they can't be decided as a matter of law. For example, was his ability to earn a living impaired enough to have rise to deprivation of liberty interest? I contend that the evidence shows that it was. The city says that it wasn't. But maybe in the circumstances of this case, it should be presented to the judge. What is your evidence or your showing on connecting Ms. Mancini with the starting of the rumors? Ms. Mancini was a supervisor over a group of other managers. The other managers were all telling other employees of the allegations. What's your link between Mancini and her publication to others outside of MUNI? We don't have a direct link. All we can show is that those people were hearing about it, and that that would have been expected given the position that Mr. Rodriguez had in his community and within MUNI. Counsel, your time has expired. Thank you, Your Honor. Thank you. The case just argued will be submitted for decision. And we will now hear argument in Granite Rock Company v. The United States.
judges: O'scannlain, Siler , Hawkins